UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00552-GNS-DW

KESHIA CLEMONS,
as Mother and Next Friend of T.W.                                             PLAINTIFF

v.

SHELBY COUNTY BOARD OF EDUCATION;
SCOTT RICKE; JOHN LEEPER; and
JAMES NEIHOF, Superintendent                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Alter, Amend, or Vacate (DN 49). The motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. STATEMENT OF FACTS AND CLAIMS

Plaintiff Keshia Clemons ("Clemons") is the mother of T.W., a minor who was an eighth grader and a ninth grader at Martha Layne Collins High School ("MLCHS") during the 2013-14 and 2014-15 academic years, respectively. Defendant Shelby County Board of Education ("SCBE") is the governing body overseeing Shelby County Public Schools, which includes MLCHS. Defendant Scott Ricke ("Ricke") was the MLCHS girls' tennis coach for the 2013-14 and 2014-15 seasons. For the relevant time period, Defendant John Leeper ("Leeper") was the Principal at MLCHS, and Defendant Dr. James Neihof ("Neihof") is the Superintendent of SCBE. The facts giving rise to this lawsuit are discussed at length in this Court's prior Memorandum Opinion and Order (DN 47) and are incorporated by reference.

1

In the prior Memorandum Opinion and Order, the Court granted summary judgment for Defendants on all claims. In the present motion, Clemons moves to alter, amend, or vacate pursuant to Fed. R. Civ. P. 59(e) and 60(b) the granting of summary judgment for Defendants. (Pl.'s Mot. Alter, Amend, or Vacate J., DN 49).

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

Fed. R. Civ. P. 59(e) provides that a party may file a motion to alter or amend a judgment no later than 28 days after the entry of the judgment. *See* Fed. R. Civ. P. 59(e). Rule 59(e) motions allow district courts to correct their own errors, "sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (internal quotation marks and citation omitted). The decision of whether to grant relief under Rule 59(e) is left to the district court's sound discretion. *See In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 573 (6th Cir. 2004). Such a motion will generally be granted only if the district court made a clear error of law, if there is an intervening change in the controlling law, or if granting the motion will prevent manifest injustice. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not. *See Sault Ste. Marie Tribe of Indian Tribes v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

Fed. R. Civ. P. 60(b) provides relief from judgment in six instances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due

diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reasons justifying relief from the operation of the judgment. The motion must be made within a reasonable time, and for reasons (1)-(3) not more than one year after the judgment, order, or proceeding was entered. Rule 60(b)(6) gives the Court broad authority to grant relief if justice requires; however, it can only do so in exceptional or extraordinary circumstances not addressed by the first five clauses of the rule. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988); *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 383 (6th Cir. 1991) (noting that the Sixth Circuit "adheres to the view that courts should apply Rule 60(b)(6) only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule."). Relief under Rule 60(b) is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992).

## IV. DISCUSSION

### A. 2013-14 Tennis Season

Clemons' argument that her claims relating to the 2013-14 tennis season were timely asserted in this action is well-taken. The arguments relating to this season were raised in briefing on the parties' respective dispositive motions. Thus, the Court will consider the merits of the claims relating to that season.

In considering whether a party is entitled to summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a

3

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

    **1.**    *Title IX*

Based on the Court's review of the allegations in the Complaint, Clemons asserted a Title IX claim relating only to the 2014-15 season, not 2013-14.[1] (Compl. ¶¶ 10-12). Thus, the Court will grant summary judgment on the Title IX claim to the extent it relates to 2013-14 tennis season.

---

[1] While the parties dispute whether tryouts were conducted at the beginning of the 2013-14 season, there is no dispute that all girls who attended the initial practices were allowed to participate on the team. (Ricke Dep. 50:7-12).

4

### 2. *Section 504 of Rehabilitation Act*

Clemons contends that Defendants discriminated against T.W. during the 2013-14 tennis season because of her disability. (Compl. ¶¶ 13-14). In particular, Clemons alleges:

> 13. That Defendant Ricke was fully aware of T.W.'s disability in the 2013-2014 school year; and regarded her as having a disability; and discriminated against her in violation of Section 504 of the Disability Act of 1973 by:
> a. Making verbal statements regarding T.W. being different and/or not being the same as the other female members of the tennis Martha Layne Collins tennis team; or words to that effect; and,
> b. Did not invite T.W. to the team banquet at the end of the 2013-2014 school year;
> 14. That the Plaintiff(s) voiced numerous protests in regard to Defendant Ricke's verbal discrimination of T.W.; which was clearly in violation of T.W.'s accommodations pursuant to Federal and State law . . . .

(Compl. ¶¶ 13-14).

In relevant part, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The law applies to all public elementary and secondary education programs receiving federal funds. *See* 29 U.S.C. § 794(b)(2)(B).

As to the allegation that Defendants failed to accommodate T.W.'s disability during this season, it is undisputed that Clemons did not disclose her daughter's diagnosis until after the second workout of the season on February 17, 2014. (Clemons Dep. 71:23-25, 74:9-11; Ricke Dep. 12:22-13:1; Defs.' Reply Mot. Summ. J. Ex. 7, at 6, DN 42-7). It was not until the 2014-15 school year, however, that Clemons requested any accommodation for T.W. (Clemons Dep. 128:16-20; Defs.' Mot. Summ. J. Ex. K, at 2). Accordingly, summary judgment for Defendants is

warranted for the 2013-14 school year with respect to any failure to accommodate because no accommodation was requested.

In moving to alter, vacate, or amend the Court's prior ruling, Clemons asserted Defendants violated the Rehabilitation Act when T.W. was required to play in a challenge match to determine seeding for the regional tournament during the 2013-14 season. (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 6-7). As reflected in the allegations quoted above, the Complaint contains no such allegation, and it is improper for Clemons to assert additional allegations not raised in the Complaint. *See Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 665-66 (S.D. Ohio 2018) ("The law is clear that a party may not expand a claim in response to a motion for summary judgment in order to create an issue of fact." (citation omitted)); *Pharos Capital Partners, L.P. v. Touche, L.L.P.*, 905 F. Supp. 814, 831 (S.D. Ohio 2012) ("The Sixth Circuit has made clear that a party may not 'expand its claims to assert new theories' in response to a motion for summary judgment." (citing *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007))). Accordingly, the Court will not consider these allegations or any related evidence.

In analyzing this claim, the Court will only consider evidence relating to the allegations asserted in the Complaint—specifically Ricke's statements directed toward T.W. and the failure to invite T.W. to the end-of-year banquet. Based on the Court's review of the record, there is a lack of direct evidence to support Clemons' Rehabilitation Act claim, the Court will apply the *McDonnell Douglas* burden-shifting scheme. *See Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016) (citations omitted).

To meet her initial burden, Clemons must establish T.W.:

(1) is disabled under the statutes, (2) is "otherwise qualified" for participation in the program, and (3) "is being excluded from participation in, denied the benefits of, or subjected to discrimination" because of his disability or handicap, and (4) (for the Rehabilitation Act) that the program receives federal financial assistance.

*Id.* at 682-83 (citation omitted). As the Sixth Circuit has explained, "the third factor's causality requirement demands a showing that similarly situated non-protected students were treated more favorably." *Id.* at 683 (citing *Shah v. Gen. Elec. Co.*, 816 F.2d 264, 268 (6th Cir. 1987)).

In her motion, Clemons argues:

> During the 2013-2014 tennis season, Coach Ricke made statements to T.W. and in front of the team regarding her disability, including: making comments about her not being "fun" like the other girls; relating to her footwork, symptomatic of her disability; and her not being social with the other girls, another symptom relating to her Asperger's Disorder.

(Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 6-7, DN 49-1 (internal citations omitted) (citation omitted)). These contentions, however, do not accurately reflect the evidence in the record.

By Clemons' own account, the 2013-14 school year was challenging for T.W. As an eighth grader, it was the first time T.W. attended MLCHS, which was a difficult adjustment from middle school. (Clemons Dep. 55:9-11). During that year, T.W. would get stressed over anything she could get in trouble for, and little things caused great anxiety. (Clemons Dep. 55:16-17, 56:14-18). In addition to Ricke, Clemons attributed some of T.W.'s anxiety to a teacher, who was apparently disorganized and did not provide T.W. with clear expectations. (Clemons Dep. 61:7-15). The stress of that school year caused Clemons to take T.W. to Seven Counties for treatment and led to T.W.'s autism diagnosis. (Clemons Dep. 56:19-57:3, 70:13-18).

In her deposition, Clemons criticized Ricke's coaching and treatment of T.W. during the entire time he served as T.W.'s tennis coach. By Clemons' account, the 2013-14 tennis season started off poorly with the first conditioning session. As she recalled:

> Q. When did you first become aware that Mr. Ricke was going to be the tennis coach that year?

> A. The first day [T.W.] got in my car and was crying, which was, I guess, after that first meeting.
> Q. Okay. And why was she crying on the first day?
> A. He had done something in the tennis conditioning, 'cause it was—it was in the gym, I guess, or in the school, that had embarrassed her, was making her jump and telling her she wasn't doing it high as the other girls and was comparing her to the other girls, so she got into the car, she was crying.

(Clemons Dep. 63:20-64:7). As T.W. testified, she felt like Ricke was singling her out. (T.W. Dep. 30:21-31:14). This conditioning session, however, occurred *before* Clemons disclosed T.W.'s disability diagnosis to Ricke. Thus, this alleged discriminatory treatment could not be because of T.W.'s disability.

By Clemons and T.W.'s accounts, Ricke's poor treatment of T.W. continued after the disclosure of the disability.[2] Clemons testified that she was not the only parent unhappy with Ricke, though she was unaware of whether other parents voiced their concerns to school officials. (Clemons Dep. 100:1-20). In Clemons' letter to Neihof, she described Ricke's approach to coaching the team during the 2013-14 season as follows:

> When his team was warming up on the courts he would almost always be hanging out with the girls who were not yet on the courts. He rarely even watched his team. He would have his back turned most times. T.W. wanted to so badly show him how good she actually is, but he paid little attention to her. When he did he would only point out her faults. His behavior towards her was the exact opposite of what T.W. needed from him, especially at that time. While she needed positive reinforcements, he gave her continuous negatives. He did this with many of the other girls as well, however the other girls did not have a disability that would cause them to shut down as a direct reaction to this type of behavior.

(Defs' Mot. Summ. J. Ex. H, at 8-9, DN 35-9). Clemons further stated:

> It became obvious that Mr. Ricke had not become the coach of the high school girls' tennis team to actually coach. He came to socialize. He enjoyed hanging out with

---

[2] According to Clemons, she first informed Ricke of T.W.'s disability on February 17, 2014, by text message. (Clemons Dep. 73:25-74:13). Ricke called Clemons after receiving the text message, and they discussed the situation. (Clemons Dep. 74:23-75:3). During that thirty- to forty-minute conversation, Ricke disclosed that his son is autistic. (Clemons Dep. 74:23-75:1, 80:10-14).

8

> the girls and having fun. He was motivated by parents who were willing to do things for him. Whether it was bringing food to the games or transporting the girls to the away matches. The better the brown nosing, the better your child would be treated.

(Defs' Mot. Summ. J. Ex. H, at 7). Thus, by her own admission, Clemons attributes Ricke's behavior towards T.W. and her teammates based on what she perceived as Ricke's poor coaching skills and his failure to focus on his coaching responsibilities, not T.W.'s disability. Similarly, T.W. conceded that Ricke favored certain players on the team. (T.W. Dep. 83:10-14). As a result and notwithstanding Plaintiff's argument to the contrary, the evidence does not show that T.W.'s non-disabled teammates were treated any more favorably than T.W.; rather, Ricke purportedly failed to properly coach T.W. as well as some of her non-disabled teammates.

Likewise, Clemons cannot prove that T.W. was not invited to the end-of-the-year banquet because of her disability. Clemons and T.W. contend that Ricke notified the team of the 2013-14 banquet after T.W. left the team, but both lack any personal knowledge of how this notification actually occurred. (Clemons Dep. 123:19-24; T.W. Dep. 38:18-25, 85:1-11). Clemons does not dispute that she withdrew T.W. from school and T.W. quit the tennis team prior to the banquet, which effectively severs any link between T.W.'s disability and her failure to be notified of the banquet.

Finally, as to T.W.'s varsity letter for the 2013-14 season, Ricke testified that none of the girls received their varsity bars at the banquet because his daughter threw them out the window of his car. (Ricke Dep. 90:22-91:5). He recalled that the girls should have received them later. (Ricke Dep. 91:5-6).

Based on the Court's review of the record, Clemons is relying on her subjective belief that T.W. was treated poorly by Ricke, was slighted because she was not invited to the banquet, and did not receive her varsity letter for that season at the banquet because of her disability. This

conduct is not evidence of causation. *See Stringer v. N. Bolivar Consol. Sch. Dist.*, Nos. 4:15CV107-NBB-JMV, 4:15CV108, 4:15CV109, 4:15CV110, 2017 WL 1032019, at *3 (N.D. Miss. Mar. 15, 2017) ("It is well settled, however, that a complainant's own subjective belief of discrimination, no matter how sincere, cannot alone serve as a basis for judicial relief." (internal quotation marks omitted) (citation omitted)). Clemons withdrew T.W. from school, and T.W. was not participating in the tennis team at the end of the season. Clemons has no complaint regarding the tennis banquet or sports letter from the school once T.W. was no longer enrolled there. Accordingly, Defendants are entitled to summary judgment on this claim. *See also Franklin v. Potter*, 600 F. Supp. 2d 38, 76 (D.D.C. 2009) (noting that federal anti-discrimination laws like the Rehabilitation Act are not intended to be "general civility code[s]." (alteration in original) (citation omitted); *see also Stephens v. Shuttle Assocs., L.L.C.*, 547 F. Supp. 2d 269, 278 (S.D.N.Y. 2008) ("[L]egislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." (internal quotation marks omitted) (citation omitted)).

For these reasons, Clemons has failed to prove a prima facie claim under the Rehabilitation Act relating to the 2013-14 season. The Court will grant summary judgment for Defendants on this claim.[3]

---

[3] In two separate paragraphs of the Complaint, Clemons purports to assert claims under the Equal Protection Clause of the U.S. Constitution and the Kentucky Constitution. (Compl. ¶¶ 7, 12). In particular, she alleges "[t]hat the foregoing discriminatory conduct during the 2014-2015 school year constitute violation(s) of . . . the Equal Protection Clause, the Fourteenth Amendment of the Constitution of the United States of America, and the Constitution of the Commonwealth of Kentucky . . . ." (Compl. ¶ 12). Thus, based on those allegations, Clemons has not asserted a federal or state constitutional claim relating to the 2013-14 season.

B. <u>**2014-15 Tennis Season**</u>

In Clemons' motion, she seeks reconsideration of the dismissal of her claims relating to the 2014-15 season. (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 3-10). After reviewing the bases for Clemons' motion, summary judgment is still warranted for Defendants on all claims.[4]

1. *Title IX*

In seeking reconsideration, Clemons reiterates the argument she unsuccessfully raised previously that the lack of tryouts for the 2014-15 boys' tennis team and the requirement of tryouts for the 2014-15 girls' tennis team constitutes a violation of Title IX. (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 3). While not clearly articulated by Clemons, her Title IX claim is properly characterized as an equal treatment claim, which "derive[s] from Title IX regulations calling for equal provision of athletic benefits and opportunities among the sexes." *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 178 F. Supp. 2d 805, 855 n.56 (W.D. Mich. 2001) (citing *Boucher v. Syracuse Univ.*, 164 F.3d 113, 115 n.1 (2d Cir. 1999)). *See also* Department of Education Office for Civil Rights, Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (1996), available at https://www2.ed.gov/about/offices/list/ocr/ docs/clarific.html (last visited June 19, 2019) ("[The U.S. Department of Education's Office of Civil Rights] considers the effective accommodation of interests and abilities in conjunction with equivalence in the availability, quality and kinds of other athletic benefits and opportunities provided male and female athletes to determine whether an institution provides equal athletic opportunity as required by Title IX. These other benefits include coaching, equipment, practice and competitive facilities, recruitment, scheduling of games, and publicity, among others.").

---

[4] Plaintiff's motion did not address any Rehabilitation Act claim relating to the 2014-15 season.

In support of her one paragraph argument, Clemons relies on *Communities for Equity v. Michigan High School Athletic Association*, 459 F.3d 676 (6th Cir. 2006). (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 3). In *Communities for Equity*, the Sixth Circuit considered a challenge to a state athletic association's decision to schedule girls' sports "in disadvantageous, nontraditional seasons." *Cmtys. for Equity*, 459 F.3d at 679. As the trial court noted in that case:

> The history of girls' sports lends a belief that girls' seasons were originally put in the seasons that they were for impermissible reasons, and they simply have not been moved because of inertia or out of concern for the inconveniences that boys' programs would face. Continued administrative convenience of being able to find facilities, coaches or officials more easily if girls and boys are in separate seasons also does not justify such a system where the separate seasons are not equal for girls.

*Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 178 F. Supp. 2d 805, 861 (W.D. Mich. 2001). In this present case, however, both boys' and girls' tennis team played in the same seasons. Thus, *Communities for Equity* is factually distinguishable and does not support Clemons' motion.

As the Court noted in its prior decision, it is not the responsibility of courts to micromanage a coach's decision in selecting team members. Clemons has not cited to any legal authority that Title IX's mandate for equal opportunity required MLCHS to allow *all* interested girls to participate on the tennis team simply because the boys' tennis team's coach declined to have tryouts because fewer boys were interested in participating than girls. The nature of each sport will necessarily dictate a reasonable number of players on a team. While a varsity girls' tennis team could have had more players than Ricke selected that season, it likely would have resulted in many team members receiving little or no varsity playing time throughout the season. At the same time, it would have presumably been more challenging for Ricke to conduct practices with so many players and would likely have resulted in a larger number of players and parents unhappy with the amount of playing-time. The Court does not believe that this is what Congress intended

in enacting Title IX, and Clemons has not provided the Court with any authority to support such judicial oversight.

For these reasons, Clemons has failed to present any grounds warranting any modification to the Court's prior ruling dismissing her Title IX claim relating to the 2014-15 tennis season. The motion will be denied as to this claim.

### 2.    *Equal Protection/Kentucky Constitution*

In seeking reconsideration of the Court's prior ruling, Clemons contends that "because the grounds upon which this Court dismissed her equal protection count vis-à-vis T.W.'s gender were not raised by Defendants but rather by the Court *sua sponte*, [] Plaintiff should be permitted to respond accordingly. (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 7). Clemons, however, mischaracterizes the Court's ruling.

In opposing Defendants' Motion for Summary Judgment, Clemons contended that there was sufficient evidence to allow her equal protection claim to be heard by a jury because Defendants discriminated against T.W. because of her disability. (Pl.'s Resp. Defs.' Mot. Summ. J. 17, DN 40). The Court concluded that she failed to establish an equal protection claim based on her disability. (Mem. Op. & Order 27-28).

In the Memorandum Opinion and Order, the Court also addressed Clemons' contention that she had a viable constitutional claim based on gender, despite the fact that T.W. was put on the team after initially being cut. (Mem. Op. & Order 28 n.26). Clemons seeks reconsideration of that ruling. (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 7-10).

As the Sixth Circuit has noted in the context of an equal protection claim relating to collegiate athletics:

> [A] coach's decisions about who plays, how much playing-time each player gets, and whether a player remains part of the team at the end of a season are, by their

nature, "based on a vast array of subjective, individualized assessments." These athlete evaluations are as or more inherently subjective than employment decisions. In making their determinations, coaches "simply . . . exercise the broad discretion that typically characterizes" the coach-player relationship. To subject run-of-the-mill coaching decisions to class-of-one equal-protection challenges would be to expose collegiate athletics to an unprecedented, unjustified, and unjustifiable level of judicial oversight.

*Heike v. Guevara*, 519 F. App'x 911, 922 (6th Cir. 2013) (internal citations omitted) (citing *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 607 (2008)). That observation is equally applicable to high school athletics. It is not appropriate for a court to micromanage the roster decisions of a high school tennis coach, and Clemons has not cited any case in her motion supporting such judicial oversight.

Accordingly, the Court properly granted summary judgment for Defendants on Clemons' constitutional claims. The Court will deny the present motion.

C. **Discovery Responses**

Finally, in Clemons' motion, she seeks relief to allow her submission of a complete copy of discovery responses. (Pl.'s Mem. Supp. Mot. Alter, Amend, or Vacate J. 10-12). Prior to this motion, the version filed with the Court (DN 30-2) was missing several pages that included the verification. (Mem. Op. & Order 25 n.24). While Defendants did not address this issue in their response, Clemons does not explain how the consideration of the omitted pages of discovery response would impact the Court's prior ruling.

As this Court noted previously:

[T]he allegation that T.W. was excluded from team meetings is insufficient to establish pretext. While Plaintiff's Answers to Interrogatories imply such an exclusion, neither Clemons' nor T.W.'s deposition provide any specific facts as to the number of times that T.W. was excluded or whether those meetings occurred during the 2014 or 2015 season. In addition, the unverified proof Plaintiff relies upon to prove pretext—Clemons' Answers to Interrogatories—contains allegations that are too lacking in specificity to create a genuine issue of material fact. As T.W.

conceded, however, Ricke never indicated that he excluded her because of her disability or that she was not sociable because of her disability.

(Mem. Op. & Order 25-26 (internal footnotes omitted) (internal citation omitted) (citation omitted)). Thus, the complete version of the discovery responses does not remedy the lack of specificity about the nature of the alleged discrimination based on disability.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Alter, Amend, or Vacate (DN 49) is **GRANTED IN PART** and **DENIED IN PART**. After considering the merits of the claims relating to the 2013-14 tennis season, Defendants are entitled to summary judgment on those claims. As the Court previously has ruled, Defendants are also entitled to summary judgment on all claims relating to the 2014-15 tennis season and reaffirms that prior ruling in this Memorandum Opinion and Order.

This is a final and appealable order.

Greg N. Stivers, Chief Judge
United States District Court

July 3, 2019

cc: counsel of record